## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

-----------------------------------------------------------------   **X**

| | |
|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION | : 3:09-md-02100-DRH-PMF<br>:<br>: MDL No. 2100 |

----------------------------------------------------------

| | |
|---|---|
| SHERILL ACEVEDO,<br>MICHELLE BERRY,<br>and<br>ALICIA ROSE, | : Judge David R. Herndon<br>: COMPLAINT AND<br>: JURY DEMAND |
|      Plaintiffs. | : Civil Action No.: 3:12-cv-10520-DRH-PMF |
| vs. | : |
| BAYER HEALTHCARE PHARMACEUTICALS, INC.,<br>BAYER PHARMA AG f/k/a<br>BAYER SCHERING PHARMA AG,<br>BAYER CORPORATION,<br>BAYER HEALTHCARE LLC,<br>BAYER HEALTHCARE AG, and<br>BAYER AG, | : |
|     Defendants. | |

-----------------------------------------------------------------   **X**

Plaintiffs, by their attorneys, Burg Simpson Eldredge Hersh & Jardine, P.C., on behalf of themselves individually, upon information and belief, at all times hereinafter mentioned, allege as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to each Plaintiffs' individual claims exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the states in which the named Plaintiffs reside.

2.    Plaintiffs are filing this Complaint as permitted by Case Management Order #9 issued by Judge David R. Herndon of this Court.   Plaintiffs state that but for that Order permitting direct filing into the Southern District of Illinois, Plaintiffs would have filed their cases in the following United States District Courts:

       a.   Plaintiff Sherill Acevedo in the United States District Court for the District of Massachusetts;

       b.   Plaintiff Michelle Berry in the United States District Court for the Eastern District of Wisconsin; and

       c.   Plaintiff Alicia Rose in the United States District Court for the Western District of Michigan.

3.    Therefore, Plaintiffs respectfully request that at the time of transfer of these actions back to the trial court for further proceedings Plaintiffs' cases be transferred to the United States District Courts as set forth above and as ordered in Case Management Order #9.

4.    This Court has personal jurisdiction over Defendants consistent with the United States Constitution and MDL No. 2100 as Plaintiffs' claims arise out of Defendants' transaction of business and the commission of tortious acts within the States of Massachusetts, Wisconsin, and Michigan, and by virtue of Defendants' substantial, continuous and systematic contacts with the States of Illinois, Massachusetts, Wisconsin, and Michigan, unrelated to Plaintiffs' claims.

**<u>PARTY PLAINTIFF SHERILL ACEVEDO</u>**

5.    Plaintiff, Sherill Acevedo, is a citizen of the United States of America, and is a resident of Hampden County, Massachusetts.

6.    Plaintiff, Sherill Acevedo, was prescribed and began using Yasmin in approximately October 2004.  She used Yasmin through approximately November 2, 2006.

7.      On November 5, 2006, Plaintiff Sherill Acevedo was diagnosed with a deep vein thrombosis.

8.      As a direct and proximate result of using Defendants' Yasmin, Plaintiff Sherill Acevedo suffered the injuries stated above, and sustained severe and permanent personal injuries, pain, suffering, and emotional distress.

9.      Plaintiff, Sherill Acevedo, was using Yasmin at the time of her injuries.

10.     Defendants' Yasmin caused the injuries and damages sustained by Plaintiff, Sherill Acevedo.

11.     At the time Plaintiff Sherill Acevedo suffered from a deep vein thrombosis, she did not know that her use of Yasmin and/or that Defendants' wrongful conduct with respect to Yasmin as described herein, could have been the cause of her deep vein thrombosis.  It was not until approximately September 2009 that Plaintiff Sherill Acevedo first saw information concerning increased risks of injury associated with Yaz and Yasmin that Plaintiff first realized that her use of Yasmin and/or Defendants' wrongful conduct regarding Yasmin could have caused her injuries.

**PARTY PLAINTIFF MICHELLE BERRY**

12.     Plaintiff, Michelle Berry, is a citizen of the United States of America, and is a resident of Kenosha County, Wisconsin.

13.     Plaintiff, Michelle Berry, was prescribed and began using Yaz in approximately May 2006.  She used Yaz through July 20, 2006, at which time she was diagnosed with bilateral pulmonary emboli.

14.      As a direct and proximate result of using Defendants' Yaz, Plaintiff Michelle Berry suffered the injuries stated above, and sustained severe and permanent personal injuries, pain, suffering, and emotional distress.

15.     Plaintiff, Michelle Berry, was using Yaz at the time of her injuries.

16.     Defendants' Yaz caused the injuries and damages sustained by Plaintiff, Michelle Berry.

17.     At the time Plaintiff Michelle Berry suffered from bilateral pulmonary emboli, she did not know that her use of Yaz and/or that Defendants' wrongful conduct with respect to Yaz as described herein, could have been the cause of her bilateral pulmonary emboli.  It was not until approximately August 2009 that Plaintiff Michelle Berry first saw information concerning increased risks of injury associated with Yaz and Yasmin that Plaintiff first realized that her use of Yaz and/or Defendants' wrongful conduct regarding Yaz could have caused her injuries.

## PARTY PLAINTIFF ALICIA ROSE

18.     Plaintiff, Alicia Rose, is a citizen of the United States of America, and is a resident of Branch County, Michigan.

19.     Plaintiff, Alicia Rose, was prescribed and began using Yasmin in approximately January 2006.  She used Yasmin through April 9, 2006, at which time she was diagnosed with an extensive deep vein thrombosis.

20.      As a direct and proximate result of using Defendants' Yasmin, Plaintiff Alicia Rose suffered the injuries stated above, and sustained severe and permanent personal injuries, pain, suffering, and emotional distress.

21.     Plaintiff, Alicia Rose, was using Yasmin at the time of her injuries.

22.     Defendants' Yasmin caused the injuries and damages sustained by Plaintiff, Alicia Rose.

23.     At the time Plaintiff Alicia Rose suffered from an extensive deep vein thrombosis, she did not know that her use of Yasmin and/or that Defendants' wrongful conduct with respect to Yasmin as described herein, could have been the cause of her extensive deep vein thrombosis.

It was not until approximately July 2009 that Plaintiff Alicia Rose first saw information concerning increased risks of injury associated with Yaz and Yasmin that Plaintiff first realized that her use of Yasmin and/or Defendants' wrongful conduct regarding Yasmin could have caused her injuries.

## PARTY DEFENDANTS

24.     Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

25.     Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

26.     Upon information and belief, at all relevant times Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. has transacted and conducted business in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

27.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. expected or should have expected that its acts would have consequences within the United States of America and in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

28.     Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is the holder of approved New Drug Application No. 21-676 for YAZ.

29.     Upon    information    and    belief,    Defendant    BAYER    HEALTHCARE PHARMACEUTICALS, INC. markets YAZ and Yasmin in the United States.

30.     Upon    information    and    belief,    Defendant    BAYER    PHARMA    AG    is    a pharmaceutical company domiciled in Germany.

31.     Defendant BAYER PHARMA AG is formerly known as Schering AG and Bayer Schering Pharma AG and is the same corporate entity as Schering AG and Bayer Schering Pharma AG.

32.     Upon information and belief, Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006, and then Bayer Schering Pharma AG was renamed BAYER PHARMA AG effective July 1, 2011.

33.     Upon information and belief, Defendant BAYER PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, Yasmin.

34.     Upon information and belief, Defendant BAYER PHARMA AG is the current owner of the patent(s) relating to the oral contraceptive, YAZ.

35.     Defendant BAYER PHARMA AG manufactures drospirenone and ethinyl estradiol, the progestin and estrogen contained in YAZ, Yasmin and Ocella.

36.     Upon information and belief, Defendant BAYER PHARMA AG has transacted and conducted business in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

37.     Upon information and belief, Defendant BAYER PHARMA AG expected or should have expected that its acts would have consequences within the United States of America and in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

38.     Upon information and belief, and at all relevant times Defendant BAYER PHARMA AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute YAZ/Yasmin for use as a combination oral contraceptive.

39.     Upon information and belief, Defendant BAYER CORPORATION is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

40.     Upon information and belief, Defendant BAYER CORPORATION is the sole member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which owns 100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. As such, Defendant BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

41.     At relevant times, Defendant BAYER CORPORATION was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug YAZ/Yasmin.

42.     At relevant times, Defendant BAYER CORPORATION conducted regular and sustained business in the States of Illinois, Massachusetts, Wisconsin, and Michigan, by selling and distributing its products in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and engaged in substantial commerce and business activity in the States of Illinois, Massachusetts, Wisconsin, and Michigan.

43.     Upon information and belief, Defendant BAYER HEALTHCARE LLC is a limited liability company duly formed and existing under and by the virtue of the laws of the State of Delaware, with its principal place of business located in the State of New York.

44.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC has transacted and conducted business in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.  Defendant BAYER CORPORATION is the sole member of Defendant BAYER HEALTHCARE LLC and as such for purposes of establishing diversity of citizenship, Defendant BAYER HEALTHCARE LLC is a citizen of Indiana and Pennsylvania.

45.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC expected or should have expected that its acts would have consequences within the United States of America and in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

46.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute YAZ/Yasmin for use as a combination oral contraceptive.

47.     Upon information and belief, Defendant BAYER HEALTHCARE AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, and BAYER PHARMA AG.

48.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

49.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG expected or should have expected that its acts would have consequences

within the United States of America and in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

50.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC., and BAYER PHARMA AG.

51.     Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

52.     Upon information and belief, Defendant BAYER AG is the third largest pharmaceutical company in the world.

53.     Upon information and belief, and at all relevant times Defendant BAYER AG is the parent/holding company of all other named Defendants.

54.     Upon information and belief, at all relevant times, Defendant BAYER AG has transacted and conducted business in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

55.     Upon information and belief, at all relevant times, Defendant BAYER AG expected or should have expected that its acts would have consequences within the United States of America and in the States of Illinois, Massachusetts, Wisconsin, and Michigan, and derived substantial revenue from interstate commerce.

56.     Upon information and belief, at all relevant times, Defendant BAYER AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute YAZ/Yasmin for use as a combination oral contraceptive.

9

57.     Defendants, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, and BAYER AG shall, hereinafter, be collectively referred to as "Bayer" or "Defendants."

## NATURE OF THE CASE

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

58.     Yasmin and Yaz are birth control pills manufactured and marketed by Bayer. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.  Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

59.     Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

60.     The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol.  Both products contain 3 milligrams of drospirenone.

61.     Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

62.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of

birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

63.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).  These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

64.     During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

65.     Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, which has been used in the lower dose birth control pills for decades.

66.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

67.     Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

68.     One possible mechanism of action is that drospirenone interacts differently with ethinyl estradiol compared to other progestins, such that it does not sufficiently counterbalance

the clotting effects of estrogen as do other progestins, particularly the second generation progestins.

69.     Another possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

70.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

71.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

72.     Additionally, a dangerous effect of drospirenone is that it acts as a diuretic, which travels into the kidney, and blocks the aldosterone receptors. Aldosterone is a hormone that increases the reabsorption of sodium and water and the secretion of potassium in the kidneys, resulting in dehydration. Dehydration, may lead to the formation of gallstones. Blocking the aldosterone receptor may also increase the levels of cholesterol in the blood. An excess of cholesterol, calcium and phosphate in the gallbladder reduces gallbladder emptying and results in gallbladder disease.

73.     Upon information and belief, Defendants knew or should have known that the use of drospirenone in Yasmin and Yaz presents an increased risk of gallbladder disease, which often requires surgical removal of the gallbladder.

74.     Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

75.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

76.     In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

77.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

78.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

79.     Some deaths reported occurred in women as young as 17 years old.

80.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

### Over-Promotion of Yasmin and Yaz

81.     Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

82.     However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

83.     For example, prior to its integration with Defendant Bayer in 2006, Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

84.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]"

85.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

86.     More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the more serious condition of premenstrual dysphoric disorder or "PMDD."

87.     Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

88.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone … which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

89.     The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

90.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

91.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

**<u>Plaintiff Sherill Acevedo's Use of Yasmin and Resulting Injuries</u>**

92.     As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Sherill Acevedo's medical provider prescribed and Sherill Acevedo began using Yasmin in approximately October 2004.  Plaintiff used Yasmin through November 2, 2006.

93.     On November 5, 2006, Plaintiff Sherill Acevedo was diagnosed with a deep vein thrombosis.

94.     Plaintiff Sherill Acevedo was hospitalized for approximately three days from November 5, 2006 through November 7, 2006.

95.     At the time Plaintiff Sherill Acevedo suffered from a deep vein thrombosis, she did not know that her use of Yasmin and/or that Defendants' wrongful conduct with respect to Yasmin as described herein, could have been the cause of her deep vein thrombosis.  It was not until approximately September 2009 that Plaintiff Sherill Acevedo first saw information concerning increased risks of injury associated with Yaz and Yasmin that Plaintiff first realized that her use of Yasmin and/or Defendants' wrongful conduct regarding Yasmin could have caused her injuries.

96.     As a direct and proximate result of using Yasmin, Plaintiff Sherill Acevedo suffered the injuries described above.

97.     Prior to Plaintiff Sherill Acevedo's use of Yasmin, Defendants knew or should have known that use of Yasmin created a higher risk of serious personal injury than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

98.     Therefore, at the time Plaintiff Sherill Acevedo used Yasmin, Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gallstones and gallbladder disease, and even death.

99.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to adequately warn Plaintiff Sherill Acevedo and/or her health care providers of said serious risks before she used the product.

100.    Had Plaintiff Sherill Acevedo and/or her heath care providers known of the increased risks and dangers associated with Yasmin, she would not have used the product and would not have suffered a deep vein thrombosis.

101.    As a direct and proximate result of her use of Yasmin, Plaintiff Sherill Acevedo has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to suffering a deep vein thrombosis, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will affect her throughout her lifetime.

102.    Further, as a direct and proximate result of her use of Yasmin, Plaintiff Sherill Acevedo has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

103.    Plaintiff Sherill Acevedo has also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of her use of Yasmin.

### Plaintiff Michelle Berry's Use of Yaz and Resulting Injuries

104.    As a result of Defendants' claim regarding the effectiveness and safety of Yaz, Plaintiff Michelle Berry's medical provider prescribed and Michelle Berry began using Yaz in approximately May 2006.  Plaintiff used Yaz through July 20, 2006, at which time she was diagnosed with bilateral pulmonary emboli.

105.    Plaintiff Michelle Berry was hospitalized for approximately four days from July 20, 2006 through July 23, 2006.

106.    At the time Plaintiff Michelle Berry suffered from bilateral pulmonary emboli, she did not know that her use of Yaz and/or that Defendants' wrongful conduct with respect to Yaz as described herein, could have been the cause of her bilateral pulmonary emboli.  It was not until approximately August 2009 that Plaintiff Michelle Berry first saw information concerning increased risks of injury associated with Yaz and Yasmin that Plaintiff first realized that her use of Yaz and/or Defendants' wrongful conduct regarding Yaz could have caused her injuries.

107.    As a direct and proximate result of using Yaz, Plaintiff Michelle Berry suffered the injuries described above.

108.    Prior to Plaintiff Michelle Berry's use of Yaz, Defendants knew or should have known that use of Yaz created a higher risk of serious personal injury than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

109.    Therefore, at the time Plaintiff Michelle Berry used Yaz, Defendants knew or should have known that the use of Yaz created an increased risk to consumers of serious personal

injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gallstones and gallbladder disease, and even death.

110.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz, Defendants failed to adequately warn Plaintiff Michelle Berry and/or her health care providers of said serious risks before she used the product.

111.    Had Plaintiff Michelle Berry and/or her heath care providers known of the increased risks and dangers associated with Yaz, she would not have used the product and would not have suffered from bilateral pulmonary emboli.

112.    As a direct and proximate result of her use of Yaz, Plaintiff Michelle Berry has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to suffering from bilateral pulmonary emboli, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will affect her throughout her lifetime.

113.    Further, as a direct and proximate result of her use of Yaz, Plaintiff Michelle Berry has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

114.    Plaintiff Michelle Berry has also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of her use of Yaz.

### Plaintiff Alicia Rose's Use of Yasmin and Resulting Injuries

115.    As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Alicia Rose's medical provider prescribed and Alicia Rose began using

Yasmin in approximately January 2006. Plaintiff used Yasmin through April 9, 2006, at which time she was diagnosed with an extensive deep vein thrombosis.

116. Plaintiff Alicia Rose was hospitalized for six days from April 9, 2006 through April 14, 2006.

117. At the time Plaintiff Alicia Rose suffered from an extensive deep vein thrombosis, she did not know that her use of Yasmin and/or that Defendants' wrongful conduct with respect to Yasmin as described herein, could have been the cause of her extensive deep vein thrombosis. It was not until approximately July 2009 that Plaintiff Alicia Rose first saw information concerning increased risks of injury associated with Yaz and Yasmin that Plaintiff first realized that her use of Yasmin and/or Defendants' wrongful conduct regarding Yasmin could have caused her injuries.

118. As a direct and proximate result of using Yasmin, Plaintiff Alicia Rose suffered the injuries described above.

119. Prior to Plaintiff Alicia Rose's use of Yasmin, Defendants knew or should have known that use of Yasmin created a higher risk of serious personal injury than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

120. Furthermore, upon information and belief, Defendants intentionally withheld important knowledge and information from the U.S. Food and Drug Administration, such that the FDA would not have approved of Defendants' drug or would have withdrawn approval of the drug had Defendants provided this information.

121. Therefore, at the time Plaintiff Alicia Rose used Yasmin, Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious

personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gallstones and gallbladder disease, and even death.

122.    Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to adequately warn Plaintiff Alicia Rose and/or her health care providers of said serious risks before she used the product.

123.    Had Plaintiff Alicia Rose and/or her heath care providers known of the increased risks and dangers associated with Yasmin, she would not have used the product and would not have suffered from an extensive deep vein thrombosis.

124.    As a direct and proximate result of her use of Yasmin, Plaintiff Alicia Rose has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to suffering from an extensive deep vein thrombosis, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will affect her throughout her lifetime.

125.    Further, as a direct and proximate result of her use of Yasmin, Plaintiff Alicia Rose has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

126.    Plaintiff Alicia Rose has also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of her use of Yasmin.

## PLAINTIFF SHERILL ACEVEDO'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**
**Defective Manufacturing**

127.   Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

128.   Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yasmin.

129.   The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer, Plaintiff Sherill Acevedo, without any alterations or changes.

130.   The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that the product deviated from design specification, formula, or performance standards of the manufacturer, such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

131.   As a direct and proximate result of Plaintiff Sherill Acevedo's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Sherill Acevedo suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**
**Defect in Design or Formulation**

132.    Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

133.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

134.    The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach consumers such as Plaintiff Sherill Acevedo without any alterations or changes.

135.    The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was defective in its design or formulation in that, when it left the hands of Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, and/or the product was more dangerous than an ordinary consumer would expect.

136.    The foreseeable risks associated with the design or formulation of Yasmin include, but are not limited to, the fact that the design or formulation of Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

137.    As a direct and proximate result of Plaintiff Sherill Acevedo's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Sherill Acevedo suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

**THIRD CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability**
**Defect Due to Inadequate Warning**

138.    Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

139.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

140.    The Yasmin oral contraceptive manufactured and supplied by Defendants was defective due to inadequate warning or instruction, because at the time the product left their control Defendants knew or should have known that the product was unreasonably dangerous in that it created a substantial increased risk of serious bodily harm and death to reasonably foreseeable consumers such as Plaintiff Sherill Acevedo, and Defendants failed to adequately warn consumers and/or their health care providers of such increased risk.

141.    The Yasmin oral contraceptive manufactured and supplied by Defendants was also defective due to inadequate post-marketing warning or instruction, because after the product left their control, Defendants became aware of or in the exercise of ordinary care should have known that the product posed a substantial increased risk of serious bodily harm and death to reasonably foreseeable consumers such as Plaintiff Sherill Acevedo and failed to take reasonable steps to provide adequate warnings or instructions to consumers and/or their health care providers of such increased risk.

142.    As a direct and proximate result of Plaintiff Sherill Acevedo's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Sherill Acevedo suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## FOURTH CAUSE OF ACTION

### Negligence

143.    Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

144.    Defendants had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, and/or placement of Yasmin into the stream of commerce, including a duty to ensure that its product did not pose a significantly increased risk of bodily harm and adverse events.

145.    Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin into interstate commerce in that Defendants knew, or should have known, that the product caused such significant bodily harm or death and was not safe for use by consumers.

146.    Defendants also failed to exercise reasonable care in the labeling of Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the increased risk of serious bodily injury or death due to the use of Yasmin.

147.    Despite the fact that Defendants knew or should have known that Yasmin posed a serious increased risk of bodily harm to consumers and a safer alternative design existed, Defendants continued to manufacture and market Yasmin for use by consumers.

148.    Defendants knew or should have known that consumers, such as Plaintiff Sherill Acevedo, and their physicians would rely on any representations made regarding Yasmin in deciding to prescribe or use Yasmin.

149.    Defendants knew or should have known that consumers, such as Plaintiff Sherill Acevedo, would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care as described above.

150.    As a direct and proximate result of Defendants' negligence, Plaintiff Sherill Acevedo suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

151.    Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

152.    Defendants expressly warranted that Yasmin was a safe and effective birth control product.

153.    The Yasmin birth control product manufactured and sold by Defendants did not conform to these express representations because it caused serious injury to consumers who used the product when taken in the recommended dosages.

154.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff Sherill Acevedo suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty of Fitness for a Particular Purpose

155.    Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

156.   At the time Defendants manufactured, marketed, sold, and distributed Yasmin, Defendants knew of the use for which Yasmin was intended and impliedly warranted Yasmin to be of merchantable quality, fitness, and safe for such use.

157.   Plaintiff Sherill Acevedo and her health care provider reasonably relied upon the skill and judgment of Defendants as to whether Yasmin was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

158.   Contrary to the implied warranty, Defendants' product Yasmin was not of merchantable quality or safe for its intended use because it was unreasonably dangerous as described herein.

159.   As a direct and proximate result of Defendants' breach of warranty, Plaintiff Sherill Acevedo suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

### SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

160.   Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

161.   Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and, while engaged in the course of such business, made representations to Plaintiff Sherill Acevedo and her physician regarding the character and/or quality of Yasmin for guidance in their decision to select Yasmin for Plaintiff Sherill Acevedo's use.

162.   Specifically, Defendants represented that their product was just as safe, and just as effective or more effective, than other birth control products on the market.

163.   Defendants' representations regarding the character or quality of Yasmin were untrue.

164.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yasmin created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

165.    Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as just as safe, safer, and/or more effective when compared to other oral contraceptives in order to avoid losses and sustain profits in its sales to consumers.

166.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff Sherill Acevedo and her physician.

167.    Plaintiff Sherill Acevedo and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product.   Plaintiff Sherill Acevedo reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin was just as safe and effective as other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

168.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Sherill Acevedo suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## EIGHTH CAUSE OF ACTION

### Fraudulent Concealment

169.    Plaintiff Sherill Acevedo incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

170.    At all times during the course of dealing between Defendants and Plaintiff Sherill Acevedo, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the safety of Yasmin for its intended use.

171.    Defendants knew or were reckless in not knowing that their representations were false.

172.    In representations to Plaintiff Sherill Acevedo, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

     a.  that Yasmin was not as safe as other forms of contraception;

     b.  that the risks of adverse events with Yasmin were higher than those with other forms of birth control, including but not limited to other forms of oral contraception;

     c.  that the risks of adverse events with Yasmin were not adequately tested and/or known by Defendants;

     d.  that Defendants were aware of dangers in Yasmin, in addition to, and above and beyond those associated with other forms of oral birth control methods;

     e.  that Yasmin was defective, and that it caused dangerous side effects, including but not limited to higher incidence of stroke, transient ischemic attack ("TIA"), embolisms, blood clots, gallstones and gallbladder disease, heart attacks, coma, and death, as well as other severe and permanent health consequences, at a higher and more significant rate than other forms of birth control, including but not limited to oral contraception;

     f.  that patients needed to be monitored more closely while using Yasmin than would have been required while using other forms of birth control, including but not limited to other forms of oral contraception;

     g.  that Yasmin was manufactured negligently, defectively, and/or improperly; and

h.   that Yasmin was designed negligently, defectively, and/or improperly;

173.   Defendants were under a duty to disclose to Plaintiff Sherill Acevedo, and her physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Yasmin, including but not limited to the heightened risks of adverse events, such as deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gallstones and gallbladder disease, and even death.

174.   Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Yasmin, including Plaintiff Sherill Acevedo.

175.   Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of Yasmin were done purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff Sherill Acevedo, and her physicians, hospitals and healthcare providers into continued use of Yasmin, and actions thereon, and to cause them to purchase, prescribe, use, and/or dispense the product.

176.   Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of Yasmin were done purposefully, willfully, wantonly, and/or recklessly, to conceal the cause of Plaintiff Sherill Acevedo injuries and to conceal her claim against the Defendants.

177.   Defendants knew that Plaintiff Sherill Acevedo and her physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material facts concerning Yasmin, as set forth herein.

178.   Plaintiff Sherill Acevedo, as well as her doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

179.    As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff Sherill Acevedo suffered serious, dangerous, and potentially deadly side effects, the cause of which the Defendants' concealed from Plaintiff Sherill Acevedo.

180.    As a direct and proximate result of Defendants' fraudulent concealment and omissions, Plaintiff Sherill Acevedo has suffered economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## NINTH CAUSE OF ACTION

### Violation of the Massachusetts Consumer Protection Act
### (Mass. Gen. Laws ch. 93A *et seq.*)

181.    Plaintiff Sherill Acevedo hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

182.    Plaintiff Sherill Acevedo is a person within the meaning of the Massachusetts Consumer Protection Act (the "Act").

183.    Defendants are persons within the meaning of the Act for all purposes therein.

184.    Plaintiff Sherill Acevedo is a person entitled to bring a claim pursuant to the Act.

185.    The false, deceptive and misleading statements and representations made by Defendants alleged above are Deceptive Acts or Practices within the meaning of the Act.

186.    Defendants engaged in the Deceptive Trade Practices alleged above, and those Deceptive Trade Practices occurred or were committed in the course, vocation or occupation of Defendants' business.

187.    The Deceptive Trade Practices that Defendants knowingly and willfully committed as alleged above significantly impacted the public as actual or potential customers of Defendants.

188.    As a direct and proximate result of the Deceptive Trade Practices committed by Defendants as alleged above, Plaintiff Sherill Acevedo suffered injuries, damages and losses as alleged herein.

189.    Plaintiff is entitled to recover all damages permitted by the Act, including actual damages sustained, double or treble damages, civil penalties, attorneys' fees and costs of this action.

## PLAINTIFF MICHELLE BERRY'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Strict Products Liability**
**Defective Manufacturing**

190.    Plaintiff Michelle Berry incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

191.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yaz.

192.    The Yaz oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach the consumer, Plaintiff Michelle Berry, without any alterations or changes.

193.    The Yaz oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction when it left the hands of Defendants in that it deviated from product specification such that it was unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

194.    As a direct and proximate result of Plaintiff Michelle Berry's use of Yaz as manufactured, designed, sold, supplied and/or placed in the stream of commerce by Defendants,

she suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

195.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

**SECOND CAUSE OF ACTION**

**Strict Products Liability**
**Design Defect**

196.    Plaintiff Michelle Berry incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

197.    Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yaz.

198.    The Yaz oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was expected to and did reach consumers without any alterations or changes.

199.    The Yaz oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, its design or formulation was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

200.    As a direct and proximate result of Plaintiff Michelle Berry's use of Yaz as manufactured, designed, sold, supplied and/or placed in the stream of commerce by Defendants, she suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

201.   Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION

### Strict Products Liability
### Defect Due to Inadequate Warning

202.   Plaintiff Michelle Berry incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

203.   Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yaz.

204.   The Yaz oral contraceptive manufactured and supplied by Defendants was defective due to inadequate warning or instruction and was unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers such as Plaintiff, and Defendants failed to adequately warn consumers and/or their health care providers of such risks.

205.   The Yaz oral contraceptive manufactured and supplied by Defendants was also defective due to inadequate post-marketing warning or instruction and was unreasonably dangerous to the ordinary user or consumer, because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yaz, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

206.   As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations, Plaintiff Michelle Berry suffered personal injury, economic and non-

economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

207.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

208.    Plaintiff Michelle Berry incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

209.    Defendants had a duty to exercise reasonable care in the design, manufacture, sale, marketing and/or distribution of Yaz into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

210.    Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yaz into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and was not safe for use by consumers.

211.    Defendants also failed to exercise ordinary care in the labeling of Yaz and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yaz.

212.    Despite the fact that Defendants knew or should have known that Yaz posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz for use by consumers.

213.   Defendants knew or should have known that consumers such as Plaintiff Michelle Berry would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

214.   As a direct and proximate result of Defendants' negligence, Plaintiff suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

215.   Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

216.   Plaintiff Michelle Berry incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

217.   Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yaz, and while engaged in the course of such business, made representations to Plaintiff Michelle Berry and her physician regarding the character and/or quality of Yaz for guidance in their decision to select Yaz for Plaintiff Michelle Berry's use.

218.   Specifically, Defendants represented that their product was just as safe, and just as effective or more effective, than other birth control products on the market.

219.   Defendants' representations regarding the character and quality of Yaz were untrue.

220.   Defendants had actual knowledge based upon studies, published reports and clinical experience that their product Yaz created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

221.    Defendants negligently and/or intentionally misrepresented or omitted this information in their product labeling, promotions and advertisements and instead labeled, promoted and advertised their product as just as safe, safer, and/or more effective when compared to other oral contraceptives in order to avoid losses and sustain profits in their sales to consumers.

222.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff Michelle Berry, and her physician.

223.    Plaintiff Michelle Berry and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in their labeling, advertisements, and promotions concerning the serious risks posed by the product.  Plaintiff Michelle Berry reasonably relied upon Defendants' representations to her and/or her health care providers that Yaz was just as safe and effective as other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

224.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations, Plaintiff Michelle Berry suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

225.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights, so as to warrant the imposition of punitive damages.

## SIXTH CAUSE OF ACTION

### Violation of Wisconsin's Deceptive Trade Practices Act
### (Wis. Stat. § 100.18)

226.    Plaintiff Michelle Berry incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

227.    Plaintiff Michelle Berry is a person within the meaning of the Wisconsin Deceptive Trade Practices Act (the "Act").

228.    Defendants are persons, firms and/or corporations within the meaning of the Act for all purposes therein.

229.    Plaintiff Michelle Berry is a person entitled to bring a claim pursuant to the Act.

230.    The false, deceptive and misleading statements and representations made by Defendants alleged above to Plaintiff Michelle Berry, her physicians, and the public are deceptive trade practices with the meaning of the Act.

231.    Defendants engaged in the deceptive trade practices alleged above, and those deceptive trade practices occurred or were committed in the course, vocation or occupation of Defendants' pharmaceutical business.

232.    The deceptive trade practices that Defendants committed as alleged above significantly impacts the public as actual or potential customers of Defendants.

233.    As a direct and proximate result of the deceptive trade practices committed by Defendants as alleged above, Plaintiff Michelle Berry suffered injuries, damages, and loses as alleged herein.

234.    Plaintiff is entitled to all damages permitted by Wis. Stat. § 101.18 of the Act, including pecuniary damages, attorneys' fees, and costs of this action.

## PLAINTIFF ALICIA ROSE'S CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligence

235.    Plaintiff Alicia Rose incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

236.    Defendants had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, and/or post-sale surveillance of Yasmin into the stream of commerce, including a duty to ensure that its product did not pose a significantly increased risk of bodily harm and adverse events.

237.    Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, distribution, marketing, and post-sale surveillance of Yasmin into interstate commerce in that Defendants knew, or should have known, that the products caused such significant bodily harm or death and were not safe for use by consumers.

238.    Despite the fact that Defendants knew or should have known that Yasmin posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin for use by consumers, and failed to warn those patients, including Plaintiff Alicia Rose, that Yasmin posed a serious risk of bodily harm to consumers..

239.    Defendants knew or should have known that consumers, such as Plaintiff Alicia Rose, and their physicians would rely on any representations made regarding Yasmin in deciding to prescribe or use Yasmin.

240.    Defendants knew or should have known that consumers, such as Plaintiff Alicia Rose, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

241.    As a direct and proximate result of Defendants' negligence, Plaintiff Alicia Rose suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## SECOND CAUSE OF ACTION

### Breach of Express Warranty

242.    Plaintiff Alicia Rose incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

243.    Defendants expressly warranted that Yasmin was a safe and effective prescription oral contraceptive.

244.    Defendants expressly warranted that Yasmin was of merchantable quality and safe for use by consumers and users, including Plaintiff Alicia Rose, for its intended use.

245.    The Yasmin birth control product manufactured and sold by Defendants did not conform to these express representations because it caused serious injury to consumers, including Plaintiff Alicia Rose, who used the product when taken in the recommended dosages.

246.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff Alicia Rose suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## THIRD CAUSE OF ACTION

### Breach of Implied Warranty

247.    Plaintiff Alicia Rose incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

248.    At the time Defendants manufactured, marketed, sold, and distributed Yasmin, Defendants knew of the use for which Yasmin was intended and impliedly warranted Yasmin to be of merchantable quality, fitness, and safe for such use.

249. Plaintiff Alicia Rose and her health care provider reasonably relied upon the skill, judgment, and representations of Defendants as to whether Yasmin was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

250. Contrary to the implied warranty, Defendants' product was Yasmin not of merchantable quality or safe for its intended use, because it was unreasonably dangerous as described herein.

251. As a direct and proximate result of Defendants' breach of warranty, Plaintiff Alicia Rose suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

252. Plaintiff Alicia Rose incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

253. Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin, and while engaged in the course of such business, made representations to Plaintiff Alicia Rose and her physician regarding the character and/or quality of Yasmin for guidance in their decision to select Yasmin for Plaintiff Alicia Rose's use.

254. Specifically, Defendants represented that their product was just as safe, and just as effective or more effective, than other hormonal birth control products on the market.

255. Defendants' representations regarding the character or quality of Yasmin were untrue.

256. Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yasmin created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

257.     These representations were made by Defendants with the intent of defrauding and deceiving the medical community, Plaintiff Alicia Rose, and the public in general, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense, and/or purchase Yasmin, all of which is evidence of callous, reckless and willful disregard for the health, safety and welfare of Plaintiff Alicia Rose.

258.     At the time said representations were made by Defendants, and at the time Plaintiff Alicia Rose used Yasmin, Plaintiff Alicia Rose and/or her medical providers were unaware of the falsity of said representations and reasonably believed them to be true.

259.     Plaintiff Alicia Rose and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions concerning the serious risks posed by the product.  Plaintiff Alicia Rose reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin was just as safe and effective as other types of oral contraceptives for human consumption.

260.     As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations, Plaintiff Alicia Rose suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## FIFTH CAUSE OF ACTION

### Fraudulent Concealment

261.     Plaintiff Alicia Rose incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

262.     At all times during the course of dealing between Defendants and Plaintiff Alicia Rose, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the safety of Yasmin for its intended use.

263.    Defendants knew or were reckless in not knowing that their representations were false.

264.    In representations to Plaintiff Alicia Rose, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

    a.  that Yasmin was not as safe as other forms of contraception;

    b.  that the risks of adverse events with Yasmin were higher than those with other forms of birth control, including but not limited to other forms of oral contraception;

    c.  that the risks of adverse events with Yasmin were not adequately tested and/or known by Defendants;

    d.  that Defendants were aware of dangers in Yasmin, in addition to, and above and beyond those associated with other forms of oral birth control methods;

    e.  that Yasmin was defective, and that it caused dangerous side effects, including but not limited to higher incidence of stroke, transient ischemic attack ("TIA"), embolisms, blood clots, gallstones and gallbladder disease, heart attacks, coma, and death, as well as other severe and permanent health consequences, at a higher and more significant rate than other forms of birth control, including but not limited to oral contraception;

    f.  that patients needed to be monitored more closely while using Yasmin than would have been required while using other forms of birth control, including but not limited to other forms of oral contraception;

    g.  that Yasmin was manufactured negligently, defectively, and/or improperly; and

    h.  that Yasmin was designed negligently, defectively, and/or improperly;

265.    Defendants were under a duty to disclose to Plaintiff Alicia Rose, and her physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Yasmin, including but not limited to the heightened risks of adverse events, such as deep vein thrombosis, pulmonary embolism, heart attacks, stroke, development of gallstones and gallbladder disease, and even death.

266.     Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Yasmin, including Plaintiff Alicia Rose.

267.     Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of Yasmin were done purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff Alicia Rose, and her physicians, hospitals and healthcare providers into continued use of Yasmin, and actions thereon, and to cause them to purchase, prescribe, use, and/or dispense the product.

268.     Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of Yasmin were done purposefully, willfully, wantonly, and/or recklessly, to conceal the cause of Plaintiff Alicia Rose injuries and to conceal her claim against the Defendants.

269.     Defendants knew that Plaintiff Alicia Rose and her physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material facts concerning Yasmin, as set forth herein.

270.     Plaintiff Alicia Rose, as well as her doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

271.     As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff Alicia Rose suffered serious, dangerous, and potentially deadly side effects, the cause of which the Defendants' concealed from Plaintiff Alicia Rose.

272.     As a direct and proximate result of Defendants' fraudulent concealment and omissions, Plaintiff Alicia Rose has suffered economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

## SIXTH CAUSE OF ACTION

### Violation of Michigan's Consumer Protection Act
### (M.C.L.S. § 445.901, *et seq.*)

273.     Plaintiff Alicia Rose incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

274.     Plaintiff Alicia Rose is a person within the meaning of the Michigan Consumer Protection Act ("Act").

275.     Defendants are persons within the meaning of the Act for all purposes therein.

276.     Plaintiff is a person entitled to bring a claim pursuant to the Act.

277.     The unfair, unconscionable, and deceptive statements and representations made by Defendants alleged above are deceptive methods, acts, or practices within the meaning of the Act.

278.     Defendants engaged in the deceptive methods, acts, or practices alleged above, and those deceptive methods, acts, or practices occurred or were committed in the course, vocation or occupation of Defendants' pharmaceutical business.

279.     The deceptive methods, acts, or practices that Defendants committed as alleged above significantly impact the public as actual or potential customers of Defendants.

280.     As a direct and proximate result of the deceptive methods, acts, or practices committed by Defendants as alleged above, Plaintiff Alicia Rose suffered injuries, damages and losses as alleged herein.

281.     Plaintiff is entitled to all damages permitted by M.C.L.S. § 445.911 of the Act, including actual damages sustained, civil penalties, attorneys' fees, and costs of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.      For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial in accordance with Case Management Order #9 issued by United States District Court Judge David R. Herndon.

2.      Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

3.      Plaintiff Michelle Berry seeks punitive and/or exemplary damages for the Defendant's oppressive, fraudulent, wanton, and malicious conduct that demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff Michelle Berry, in an amount sufficient to punish Defendants and deter future similar conduct;

4.      Awarding all applicable statutory damages of the state whose laws will govern this action;

5.      Awarding Plaintiffs reasonable attorneys' fees;

6.      Awarding Plaintiffs the costs of these proceedings; and

7.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.


Dated: March 20, 2012                         RESPECTFULLY SUBMITTED,


                                               /s/ Calvin S. Tregre, Jr.
                                              Calvin S. Tregre, Jr.
                                              Janet G. Abaray
                                              **BURG SIMPSON**
                                              **ELDREDGE HERSH & JARDINE, P.C.**
                                              312 Walnut Street
                                              Suite 2090
                                              Cincinnati, OH 45202
                                              Tel: (513) 852-5600
                                              Fax: (513) 852-5611
                                              jabaray@burgsimpson.com
                                              ctregre@burgsimpson.com

                                              Michael S. Burg
                                              Seth A. Katz
                                              **BURG SIMPSON**
                                              **ELDREDGE HERSH & JARDINE, P.C.**
                                              40 Inverness Drive East
                                              Englewood, Colorado 80112
                                              Tel: (303) 792-5595
                                              Fax: (303) 708-0527
                                              skatz@burgsimpson.com
                                              mburg@burgsimpson.com

                                              **Attorneys for Plaintiffs**